IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LIGHTHOUSE FINANCIAL CORP. ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NUMBER |
| v. ) | |
| ) | 00-C-2330-S |
| DAVID F. BYERS, SR., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Lighthouse Financial Corporation has brought this breach of contract action against David F. Byers, Sr. for sums it alleges Mr. Byers owes as the Guarantor of a loan. In response, Mr. Byers has filed a counterclaim for breach of contract, fraud, and breach of fiduciary duty based upon the alleged conduct of Lighthouse in maximizing the credit made available to Cahaba Valley Millwork while minimizing the recovery of accounts receivable. Presently before this Court are (1) Plaintiff's Motion to Dismiss Amended Counterclaim, and (2) Plaintiff's Motion for Summary Judgment. For the reasons discussed herein, this Court will GRANT Plaintiff's Motion to Dismiss Amended Counterclaim with respect to Defendant's breach of fiduciary duty claim, and DENY Plaintiff's Motion for Summary Judgement.

## I. Background

On December 4, 1997, Lighthouse Financial Corporation ("Lighthouse") loaned $2.5 million to Cahaba Valley Millwork ("Cahaba Valley"). On July 20, 1998, the loan amount was raised to $3 million. The loan was officiated pursuant to a Revolving Credit Note (the "Note"), a Loan and Security Agreement (the "Loan Agreement"), and a Guaranty Agreement (the "Guaranty") (collectively, the "Loan Documents"). The Guaranty established Mr. David F. Byers, Sr. ("Byers") as the Guarantor of the Loan. As the Guarantor, Byers unconditionally guaranteed the payments of all indebtedness and performance of all obligations owing by Cahaba Valley to Lighthouse arising in connection with the Loan Agreement or other Loan Documents.

Cahaba Valley defaulted on the Loan and requested that Lighthouse forbear from exercising its rights under the Loan Documents. Lighthouse consented and on May 4, 1999, the parties entered into a Forbearance Agreement. When Cahaba Valley again defaulted under the terms of the Forbearance Agreement, Lighthouse demanded payment. On November 12, 1999, Lighthouse, Cahaba Valley, and Byers executed a Turnover of Collateral Agreement (the "Turnover Agreement") through which Cahaba Valley placed all its assets in Lighthouse's possession. In this agreement, Byers acknowledged that none of Lighthouse's rights and remedies under the Loan Documents were limited. Upon the execution of the Agreement, Lighthouse proceeded to auction Cahaba Valley's physical capital assets and collect its accounts receivable. Byers alleges that Cahaba

Valley's efforts in both these regards were insufficient and in bad faith.

Lighthouse contracted with the local auction company Pearce and Associates ("Pearce") to conduct an auction of Cahaba Valley's assets. Over 1,000 people attended the auction. The auction generated funds in excess of $500,000, more than the $300,000 to $350,000 that Pearce estimated would be raised. Byers has testified that based upon his familiarity with the inventory of Cahaba Valley, the auction should, however, have netted in excess of $1.5 million. He alleges that many of Cahaba Valley's assets, including monitors, computer systems, and printers, were sold to "insiders" prior to auction for far less than the items were worth. Byers claims that $1.5 million could have been achieved by placing all items available at Cahaba Valley for sale at auction.

Pursuant to the Turnover Agreement, Lighthouse also attempted to collect accounts receivable due and owing to Cahaba Valley. Lighthouse hired Cahaba Valley CFO Johnny Williams ("Williams") and AmSher Receivables ("AmSher") to assist in this effort. Lighthouse also hired two other former Cahaba Valley employees, Carl Guy and Dennie Lilly, to assist with collection. Lighthouse agreed to pay AmSher a 10% commission on all receivables. To the extent that a receivable was transferred to an attorney for collection, AmSher requested 33 1/3% of any collections. Lighthouse alleges that it instructed AmSher and Williams to maximize recovery on any and all receivables of Cahaba Valley.

Lighthouse claims that AmSher made three collectors primarily responsible for the

collection of the accounts: David Lynum, Greg Bend, and Jean Florence. Each of these collectors is a longtime employee of Cahaba Valley and together they have over thirty years of combined experience. Lighthouse further alleges that Carl Guy, Dennis Lilly, and Williams worked with the three collectors to provide any backup support necessary for the collection of the receivables.

Byers alleges that Lighthouse ineffectively attempted to collect the accounts receivable of Cahaba Valley. Byers claims that Pat McClain, an employee of Cahaba Valley in charge in some of the accounts payable at the time of the liquidation, went back into the building after the turnover and saw volumes of records and files containing information regarding accounts payable and accounts receivable strewn all over the floor. Ms. McClain testified that, to her knowledge, neither Williams nor Carl Guy nor Dennis Lilly assisted with the liquidation. Byers further points to the testimony of other members of the accounts receivable department who stated that collecting accounts receivable is a complex process that requires training.

After four months of collection, Williams and AmSher collected $1.5 million. Lighthouse alleges that it did not collect as much as initially anticipated in the collection of the receivables because of over-billing by Cahaba Valley. Byers claims that differentials in quoted prices and billed prices are due to the short life span of the quotes generated by the computerized quote system employed by Cahaba Valley and do not excuse under-collection by Plaintiff.

Lighthouse has made demands on Byers to pay Cahaba Valley's remaining debt obligation of $783, 912.45 plus accruing interest, attorneys' fees, and costs. Byers has failed to remit payment.

## II. Discussion

### A. Motion to Dismiss Amended Counterclaim

On May 23, 2001, Byers amended his counterclaim to add an additional charge of breach of fiduciary duty as against Lighthouse[1]. In the Amended Counterclaim, Byers alleges that since Williams served as Chief Financial Officer of Cahaba Valley for approximately two years prior to the execution of the Turnover Agreement, Lighthouse breached its fiduciary duty to Byers when it hired Williams to assists in the collection of accounts receivable. Byers alleges that neither Williams nor Lighthouse disclosed the conflict of interest and that Williams acted in concert with Lighthouse in the misrepresentation of material facts to Cahaba Valley, the falsification of books and records, the improper use of Cahaba Valley funds, and the wasting of substantial Cahaba Valley assets.

For purposes of a motion to dismiss, all the allegations in a Complaint are

---

[1] Having already denied Plaintiff's Motion to Dismiss Byers' counterclaims of fraud and breach of contract, the Court need only consider the sufficiency of Byers' claim that Lighthouse breached its fiduciary duty.

5

construed in light most favorable to the claimant. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). All facts alleged by claimant are taken as true. Id. A court cannot dismiss for failure to state a claim unless "it appears beyond doubt that the [claimant] can prove no set of facts which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The issue on a motion to dismiss is not whether the claimant will ultimately prevail; instead the determinative issue is whether the claimant is entitled to offer evidence to support the claims. Scheuer v. Rhodes, 416 U.S. 232, 236 (1994).

In Bank of Red Bay v. King, 482 So. 2d 274 (Ala. 1985), a fiduciary or confidential relationship was defined:

> [Such a relationship is one in which] one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another.

Id. at 284. In Alabama, a relationship between a creditor and a debtor generally does not impose a fiduciary duty on the creditor. See K & C Development Corp. v. AmSouth

6

Bank, N.A., 597 So. 2d 671, 675 (Ala.. 1992); Power Equip. Co. v. First Alabama Bank, 585 So. 2d 1291 (Ala. 1991); Faith, Hope & Love, Inc. v. First Alabama Bank of Talledega County, N.A., 496 So. 2d 708 (Ala. 1986); Gulf States Steel, Inc. v. Lipton, 765 F. Supp. 696, 703 (N.D. Ala. 1990) ("Alabama law clearly does not imply a fiduciary duty into the debtor-creditor relationship")[2]. Only in the unusual instance in which the debtor can show that it relied on the creditor for financial advice, or that other "special circumstances" existed, can a debtor establish a fiduciary relationship with the creditor. Id. Where the essential relationship between the parties is that of debtor-creditor/lender-borrower, and the parties dealt at arm's length, no fiduciary duty arises under Alabama law. Nettles v. First National Bank of Birmingham, 388 So. 2d 916 (Ala. 1980).

In the present case, Byers has not alleged any facts that would alter his guarantor-creditor relationship with Lighthouse so as to make it a relationship in which fiduciary duties would apply. Byers does not claim that he relied on Lighthouse for financial advice nor that there were other "special circumstances" that gave rise to the requisite 'advisory'/confidant relationship. Even if this Court accepts as true all the allegations included in Byers' counterclaim for breach of fiduciary duty, the Court could not conclude a legal wrongdoing. Plaintiff's Motion to Dismiss the Amended Counterclaim is therefore due to be granted with respect to the fiduciary duty claim.

---

[2] Note that Defendant/Cross-Claimant has not cited a single case applying Alabama law in which a fiduciary relationship has been held to exist between a creditor and a debtor.

### B. Motion for Summary Judgment

Plaintiff Lighthouse moves for summary judgment, claiming that it is clear under the express and unambiguous terms of the Guaranty that Byers is liable for any and all indebtedness of Cahaba Valley and it is thus entitled to summary judgment as a matter of law. Byers does not dispute that he executed these agreements, that these agreements gave Lighthouse discretion in the disposition of the collateral, or that he was represented by counsel when signing the Turnover Agreement. Rather, Byers alleges that any obligations owed to Lighthouse under the Loan Documents are negated by Lighthouse's improper actions in regards to the sale of Cahaba Valley's assets and the collection of accounts receivable .

Summary judgment is properly granted when there is no genuine of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). A fact is deemed material if it might affect the outcome of the litigation. See Mulhall v. Advance Security, Inc., 19 F.3d 586, 590 (11th Cir. 1994); cert. denied, 115 S. Ct. 298 (1994). The substantive law governing the dispute determines whether facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (11th Cir. 1986). The moving party bears the burden of establishing the lack of genuine issue of material facts. Once met, the burden shifts to the nonmoving party to demonstrate the existence of a triable issue of

material fact. See Chanel, Inc. v. Italian Activewear, Inc., 931 F.2d 1472, 1477 (11th Cir. 1991). The Court views all facts in the light most favorable to the nonmoving party.

It is well-established under Alabama law that a secured party has an obligation to act in a commercially reasonable manner in both the sale of debtor's collateral and the collection of debtor's accounts payable. Section 7-9-504 of the Alabama Code governs a secured party's right to dispose of collateral upon default and explicitly states that "...every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable." Ala. Code § 7-9-504(3). See also First National Bank of Dotham v. Rikki Tikki Tavi, Inc., 444 So. 2d 889, 890 (Ala. 1984) ( "the principal limitation on the secured party's right to dispose of collateral is the requirement that he proceed in good faith and in a commercially reasonable manner"). Likewise, Section 7-9-502 of the Alabama Code which governs a secured party's collection rights establishes that "a secured party...who undertakes to collect from the account debtors or obligors must proceed in a commercially reasonable manner and may deduct his reasonable expenses of realization for the collections." Ala. Code § 7-9-502(2).

In the instant case, Defendant has proffered evidence in support of allegations that Lighthouse undersold Cahaba Valley's assets at auction by $1 million and acted unscrupulously and ineffectively in its collection of accounts payable and the auctioning of assets. These validity of these assertions is certainly relevant to the commercial

reasonableness of Plaintiff's actions and, in turn, Defendants own obligations. Judgment without further inquiry into these disputed facts would be improper. Plaintiff's Motion for Summary Judgment must therefore be denied.

### III. Conclusion

For the above reasons, this Court finds that Plaintiff's Motion to Dismiss Amended Counterclaim is due to be GRANTED with respect to the claim of breach of fiduciary duty. The Court additionally finds that Plaintiff's Motion for Summary Judgment is due to be DENIED.

These conclusions will be embodied by separate order.

Done this 27th day of November, 2001.

_____
Chief United States District Judge
U. W. Clemon